Thank you, Mr. Chief Judge, and may it please the Court, in dismissing the Lacey Act indictments in these cases, the District Court incorrectly relied on an exception to the Lacey Act for activities regulated by a fishery management plan, in effect, under the Magnuson-Stevens Act, a federal fisheries law that regulates fishing in federal waters. The District Court's reliance on that exception was in error for two main reasons. First, the plan that the District Court invoked, which is a management plan prepared by a group of states as part of the Atlantic States Marine Fisheries Commission, an interstate compact group, was not in effect under the federal fishery law, the Magnuson-Stevens Act. But second, even if that plan were in effect as a legal matter under the Magnuson-Stevens Act, the defendant's activity, which is fishing in federal waters, is not regulated by that plan. That is so because the plan is prepared by a group of states who can only have regulatory power to regulate fishing in state waters. Defendants' fishing occurred in federal waters. So it was in error for the District Court to rely on the exception for activity regulated by that plan. Before turning to those arguments points, I wanted to just provide a little bit of context. The defendants are four of approximately a dozen different individual commercial trawl fishing vessel captains who are all indicted under the Lacey Act. And the remaining cases that are not on appeal are still pending before the District Court. And the disposition of the Lacey Act charges in those cases will depend on the outcome here. Those individuals sold and they transported tons of striped bass that were caught in knowing violation of the Secretary of Commerce's regulation prohibiting that catch of striped bass in federal waters. Some of the defendants, two of them here, were also charged with making material false statements to the Secretary of Commerce's National Marine Fisheries Service about where they were fishing. They claimed they were fishing only in state waters. But vessel tracking data, as we alleged in the indictments, will show that the fishing did take place in federal waters contrary to their statements. The crux of your argument is that this plan fell under the Bass Act and not the MacGusin-Stevenson Act. And since the Bass Act dealt with state-type activity, it didn't apply in this case. That's essentially correct. There are a couple reasons why the plan that the State's Commission has prepared is not in effect under the MacGusin-Stevenson Act. One is that it was not prepared under the substantive legal authority of the MacGusin-Stevenson Act. I don't think anybody disputes that. It didn't follow the procedural requirements of the MacGusin-Stevenson Act. Normally that statute sets up a regime where federal councils prepare management plans regulating fishing in federal waters, and then they submit those to the Secretary of Commerce for her approval. Then they submit regulations that the Secretary can tinker with a little bit but only change for technical reasons before she sets them out for public notice and comment. The Bass Act, on the other hand, doesn't any longer provide any authority for those federal fishery councils to prepare plans governing fishing in federal waters. It simply has an authorization for the Secretary to issue a regulation. So you're saying a fishery management plan cannot be issued under the Bass Act any longer? That's correct. Not by the federal councils. Isn't there another statute that references it? What is it, the 5158? So those reference the Commission's plans. They refer to the plan that's already in place for the bass. The bass plan, the State's Commission's prepared around 1981, and it speaks principally to state regulation in state waters. Now the Coastal Management Act that Your Honor is talking about was modeled after the Commission's Bass Act planning. It authorizes the Commission, it advises the Commission to continue preparing management plans governing fishing in state waters for other species. But it does not speak to the preparation of plans by federal councils, which are the traditional regime under the Magnuson Act. Now this is a very specific regime. I mean, the District Court, and it's expressed in some of my friends' briefs, had some problems with the complication of this, the complexity of this regime. But this is a specific, highly specific regulatory regime that Congress has chosen. And it fits the striped bass, the unique features of the striped bass particularly well, given that Congress has recognized that the striped bass is primarily a state water fish, but it travels interjurisdictionally. Not only does it live a life cycle both in the ocean and in fresh water, but it also migrates with the seasons up and down the Atlantic Coast. In the wintertime, migratory populations tend to congregate in the southern states like the Carolinas off the coast there. And there's some perception in the public, and this is expressed in some of Secretary of Commerce's federal register notices that we've cited in our brief, there's some perception in the public that large female bass fish tend to hang out in the winter in federal waters, feeding, fattening up before they go and spawn a little further north. So there's a federal enforcement loophole that Congress was attempting to correct when it authorized the Secretary of Commerce to issue this regulation. It would be indeed strange if, by the district court's reasoning, an important enforcement tool in the federal government's criminal toolbox, if you will, was taken away from assisting the states in enforcing their own state laws. After all, the Lacey Act itself was passed more than 100 years ago to assist states with enforcing their own state laws when it came to wildlife. The problem there was wildlife were being taken in violation of state laws and then transported elsewhere where the defendants could not be prosecuted. Congress stepped in then to assist the states, not by demanding federal regulation, but by providing a tool for federal prosecution based on wildlife taken in violation of state laws. The Bass Act comes from a similar motivation. Congress was intending to help the states enforce their own laws and to help the states commission complementing its efforts to regulate fishing in state waters through additional regulation in federal waters. Let me ask you this. I know you're familiar with the district court's order and the analysis that he goes through to reach the result he reaches. In your opinion, where does he first go wrong in his analysis? So I think when he's identifying the plan prepared by the states commission as a plan that is spoken to by Section 5158C, that's a critical mistake. It's tricky because 5158C does talk about a plan, but if you look back at the statutory history of that section, it's referring to a time when the fishery councils, the federal councils, were authorized to prepare a plan for bass. They never did, but that provision got left in there. So he relied on that to say this is a plan under the Bass Act. But 5158C says it talks about a plan issued under subsection A of that statute. The commission's plan wasn't issued under that subsection. It would be right unusual for us to rule that we're going to ignore a word in a federal statute or regulation. I understand. I mean, this is essentially a scrivener's error, what's happened here. It's a drafting error. My job would be a whole lot easier if I could just attribute language under statute regulation that I didn't like or kept me from taking a particular avenue of analysis. If I could just say it's a scrivener's error. Right. No, I understand. Even if the district court were correct that that plan was the plan referenced in subsection C, that section talks about a plan being authorized under subsection A, which only talks about regulations. It doesn't talk about, and it talks about the secretary's responsibilities, not the commission's responsibilities. So there's a disconnect there as well. The district court then errs again in saying that that plan, even accepting that the plan is effective under the Bass Act and made effective as a Magnuson Act plan, the district court errors in assuming that that plan regulates fishing in federal waters. And that's the critical language in the Lacey Act exception. It's an activity regulated by a fishery management plan. The district court cited the commission's plan, and it's not in the record, but we quote from it on page 43 of our blue brief and 10 and 11 of our gray reply brief. And what that commission plan says is that management of striped bass in the EEZ, which is federal waters, is within the jurisdiction of the Secretary of Commerce. So the plan itself expressly disclaims authority to regulate fishing in federal waters. It says that is left for the Secretary of Commerce. So even putting aside the question of the legal effect of that plan, it simply is not the case that defendants' fishing activity in federal waters was regulated by the commission's plan, which only speaks to state waters. And I should note, you know, I commend to the court the very fine amicus brief that the commission submitted, agreeing with the government's analysis here. And in particular, I mean, this is an area where Congress has spoken with specificity out of policy concerns to assist an iconic fish that's, you know, its conservation is entwined with the nation's history. And it's, you know, I think it's incumbent on this court to look at the language of the statute and the statutory history and to see how the district court strayed from the correct interpretation there. In addition, I mean, I think that this fish, by its nature, poses challenges in managing for its conservation. Because of its interjurisdictional nature, which Congress recognized in the purpose and findings of the Bass Act, there is no one sovereign that possesses authority to regulate this fish throughout its entire range. So Congress carefully divided the responsibilities between the states and the federal government. Let me ask you a question before you run out of time. One of the arguments made by the appellants is that the Lacey Act is unconstitutionally vague and overbroad based on the exception that exists in it. Without any question, this is a maze of regulations that you have to work your way through to get to the answer. In this particular case, we have a veteran district court judge who sat down, analyzed it, and according to you, got it wrong. And if he gets it wrong as a practical matter, how do we expect the average citizen, a fisherman, to know what he can do or can't do if a veteran district judge, in your opinion, gets it wrong? Well, I think that the path to the result is, I think the path is fairly clear. I think the text of the plan itself, when it says that the Secretary of Commerce regulates fishing in federal waters, it simply can't mean that the states do the opposite, that they regulate fishing in federal waters. So I think that was one point that the district court missed that is fairly plain on the face of the commission's plan. But regardless, there is a scienter requirement in the Lacey Act. The defendants have to know that. They don't have to know the existence of the Lacey Act, but unlike a lot of federal statutes, they do have to know that their conduct was unlawful. Even based on your argument this morning, to get to the results you want to reach, you have to take the position that some of the words used in the regulation are inappropriate and should be disregarded. And this is not even a normal construction of a statute or regulation. I mean, now we're talking about ignoring some of the language because you have to go back to legislative history to realize that that language shouldn't be in there. Well, I think there's another, I mean, there are other ways. That's one alternative way of understanding that provision. You can accept that that language that we say is an error remains there and refers to the commission's plan. And still, by looking at that provision's reference to Part A of that statute, discover, I think the ordinary person can discover that that Part A only talks about regulations, not about plans. And it talks only about the Secretary of Commerce, not about the states and their commission. So I think there are features of the statute that are complex and all of that, but I think there's a path toward a clear result here that ordinary people can understand. And I do think in a lot of these vagueness cases, I mean, there are two Lacey Act cases we've cited in our brief where vagueness challenges have been rejected. Granted, they were in other contexts, but in both contexts, the Court relied on the knowledge requirement that here, the fish have to be taken knowingly in violation of the Secretary's regulation. And I don't think there's any question that the government could prove that here. And I'd like to reserve the remainder of my time for rebuttal. Okay. Thank you. Argument on behalf of the defendant. May it please the Court, my name is Joe Zasitarsky. Along with Jack O'Hale, we represent the appellees in this case, the four fishermen, Mr. Daniels, Mr. Daniels, Mr. Saunders, and Mr. Potter who are charged in this case. We obviously believe that the District Court got it right and that the order dismissing the Lacey Act charges in these cases are proper. The government's theory of prosecution in this case is one that has never been approved by an appellate court before in terms of they are trying to apply the Lacey Act to a situation, an allegation of illegal fishing for striped bass in the EEZ. And I'd like to address, if I could, just begin with the points that the government just pointed out where they claim that the District Court got it wrong. The first point that the government makes is, well, the government says that this fishery management plan that's been issued for striped bass, undoubtedly by the Commission, is not a plan referred to in Section 5158C of the Bass Act. And we would submit that the government's got that wrong on a number of counts. First of all, the Bass Act itself authorizes the Commission to issue such a plan. It defines the word plan in the Act as the plan that we're talking about in this case, and it goes so far as to set standards for the Commission to set that plan in Section 5157 of the statute. So clearly in the Bass Act, Congress is referring to this fishery management plan that is at issue in this case. Well, how does the plan regulate fishing in the EEZ? It incorporates the Secretary's power. How does it regulate? What does it say? What does it do? Section 4.8.8.1 says that with respect to federal waters, the Secretary will issue regulations covering the EEZ. But how has that happened? There is no plan in effect, is there? Well, that's part of the plan, Your Honor. That's written in the plan, so it's part of the plan. You mean authorization to do something is part of doing it? It's not authorizing it. It's saying that this is what the Secretary is going to do. And the government's argument on that point is that the Commission is overstepping its bounds because it doesn't have jurisdiction to tell the Secretary what to do about the EEZ. Well, I'm just curious. I mean, it does say that the LACE Act prohibition does not apply if the activity is regulated by a fishery management plan. And I'm just asking how does the management plan regulate fishing in that area? Because the text of the plan makes part of it the regulation that is at issue in this case, the Secretary's regulation. The plan says in 4.8.8.1, this is part of our plan, what the Secretary makes for this regulation. That's how it regulates the activity. What does it do? What does it tell the fishermen to do? The Commission's regulation says that it prohibits the taking of striped bass in the EEZ. That regulation prohibits it. The plan says we're making part of the plan this regulation. That's our response to the government's argument on that point. Are you arguing that a state can authorize the Secretary to issue regulations? No, Your Honor. What I'm saying is that this plan is making part of it the Secretary's regulation. The plan is not saying we tell the Secretary to do A, B, C, or D. It is recognizing that the Secretary makes that decision and it is incorporating into the plan the Secretary's decision about fishing in the EEZ. And the statutory scheme here reflects that because the Striped Bass Act necessarily says we have this plan and then in subsection C it says any plan or regulation issued under subsection A, the enforcement provisions of the Magnuson-Stevens Act are going to apply to it as if it were issued under the Magnuson-Stevens Act. Now, the government says that plan is left in subsection C as a result of some scrivener's error. And that is vital to the government's position. To win this case, the government has to be right about that. I would submit respectfully that the government is wrong about that for a number of reasons. Number one is that occurred in the 1988 amendment to this statute. Well, are you saying that fishing is permitted in the EEZ? There's no regulation? No, sir. I'm not saying that. Well, what is the rule if you want to go fish in the EEZ? The rule is the rule made by the Secretary. Well, what is that rule, though? Does it exist? Sure it does. Well, what is the rule? If you're the fisherman, what do you do? Are you saying you can go out and fish in that area? That's what your clients are suggesting here. No, Your Honor. What our clients are suggesting is that violation of the commission's rule is subject to the Magnuson-Stevens Act. It is not subject to prosecution under the Lacey Act because of the exemption in the Lacey Act. The exemption in the Lacey Act says that activity regulated by a fishery management plan subject to the Magnuson-Stevens Act is not prosecutable. I probably have a simplistic idea of what the plan would be, but it would seem to me like you can fish on Monday through Wednesday, not on Thursday, Friday, Saturday, and so on. But I don't understand that any plan you're talking about says that the fishermen should do. Some plans say that, Your Honor. Some plans include prohibitions on fishing for certain species. Well, what does it say about the striped bass? In the regulation that the government is proceeding under in the indictment in this case, which is 50 CFR, and I apologize, I don't remember the last number. It is a prohibition on taking striped bass from the EEZ. The point that the basis of the district court's order and the basis that we're urging to the court is that violation of that regulation is not prosecutable under this exemption because of this statutory scheme. Under this statutory scheme, Congress is saying that we want this fishery management plan to be treated just like other fishery management plans that are issued under the Magnuson-Stevens Act. And as to those, the enforcement provisions of the Magnuson-Stevens Act apply. So a violation of the Secretary's regulation about striped bass in the EEZ is subject to enforcement under the Magnuson-Stevens Act. You know, when I look at all these statutes and regulations and I ask myself, well, can you fish or can you not fish for striped bass? Everything I read that specifically addresses that says you can't fish, you can't catch them. There's a moratorium. Yet through some, according to the government, a tortured examination of the statute, somehow we come up with the answer, well, even though everything explicit says you can't fish, it turns out you can fish legally. And so I know that's an overgeneralization and I know it's not going step by step, but if you take a broad view of it, that's what, to me, you come up with. And, Your Honor, and I think that ties into the second point that we've made in this case. When you look at the broad view of this, as Judge Fox in the district court said, the term he used is an overwrought mess. And what we're talking about here is the government is saying this conduct is prosecutable under Statute A, the Lacey Act. This exception, we say, and the district court found, prohibits that. That doesn't mean that the government doesn't have some other remedy to pursue if they believe some violation has occurred. We're dealing with a discrete question of whether the Lacey Act provisions apply. And one of the questions I had in looking at the government's reply is, well, this Lacey Act exception talks about fishery management plans in effect under the Madison-Stevens Act. Where does that apply? And I went and looked, and it turns out that there are about 35 fishery management plans that have been issued out there that cover about 75 different species that say all different kinds of things about when you can fish, when you can't fish, what you can fish for, how you can fish for it. And all of those fit under this Lacey Act exception. And the reason that's important is that means that fishing in violation of the Secretary's regulations in the EEZ as to those 75 species does not violate the Lacey Act. So when the government argues in their brief that there's this big enforcement hole as a result of the district court's ruling, that's not really accurate because we know as to all of these other species that are covered by other fishery management plans that they're not prosecutable under the Lacey Act either. And the world has worked fine with those being addressed under the Madison-Stevens Act as the statutory scheme in this case would suggest applies to the striped bass fishing. Mr. Torstey, even if we accept your argument that the commission's bass plan is in effect under this Stevens Act, it seems to me there's still the question that exists about the regulation of striped bass in federal waters being outside the jurisdiction of the commission and therefore it could not be regulated by the bass plan. And, Your Honor, I think that the question of jurisdiction or whether it's something that's part of the plan are two separate issues. The commission is not authorized to issue, is not authorized to tell the Secretary to do A, B, C, or D. But what the commission can do is make part of the plan the regulation that's issued by the commission, which is what they did in Section 4.8.8.1. And the reason that we can say that is because we know that the Bass Act itself envisions that the Secretary is going to issue these regulations and that there is going to be this plan that we're talking about in this case because it authorizes the plan to be created. It authorizes the commission to make that plan. It provides standards in 5157 for the commission to do it. Is there a plan under this Magnuson-Stevenson Act? There is not, Your Honor, and that's an important point, Your Honor, because the government argues that this is this vital commercial species and the regional councils, they make the argument in the brief, are the ones who should be making a plan and they haven't. Well, we would suggest to the court they haven't because of this plan, because of the commission's plan. The councils haven't acted because the Bass Act has the commission make that plan. And so that's why there is no traditional fishery management plan issued by the regional councils as would occur under the Magnuson-Stevenson Act because we have this plan issued by the commission. And that's why 5158C is important because Congress in 5158C is saying, we want this plan issued by the commission that we've authorized, the enforcement provisions of the Magnuson-Stevenson Act to apply to it just as if it had been issued under the Magnuson-Stevenson Act. And that's one of the steps that the district court adopts in its ruling. But isn't that tantamount to saying that the commission can strip the federal under the Lacey Act? No, it's not. Well, it is, Your Honor. Congress made that decision by enacting 5158C just like all those other fishery management plans issued under the Magnuson-Stevenson Act, the 25 or 35 or so. Those aren't prosecutable under the Lacey Act either under this exception. Congress has made that choice. And while the Department of Justice may argue for a broad, expansive reading of the criminal statutes, we know from the rules of statutory construction that the court has to interpret criminal statutes strictly. If the commission adopts a plan, does it have to go to the secretary for approval? It does not. Not under the Bass Act. And, again, that's Congress's choice. That's Congress's choice. And I think part of the problem that we would suggest, the problem that exists with the government's theory in this case, is they want to change what the Bass Act says. The only way to give effect, again, in subsection C, the government says, well, we just got to ignore the word plan as a scrivener's error. A point I want to make in response to the lengthy argument that's made in the government's reply brief about that where they go through the legislative history, in 1988 is when the amendment occurs that the government says Congress made a mistake and left plan in subsection C. Three times after that, Congress amended the Bass Act, including in 1997 a substantial overhaul of the entire act where they restated the entire thing. And it's in public law 105-146. And when they restate the entire Bass Act in public law 105-186, they still use the word plan in subsection C. And I'd suggest to the court they did that for a reason, because they were referring to the fishery management plan issued by the commission. The only place in the statute, the only plan in the Bass Act that is referred to is this fishery management plan. There is no other plan. So Congress had to be referring to this plan, we would suggest to the court. And the only way to give effect to Congress's words, and there's Fourth Circuit precedent along the lines of it's the court's duty to give effect to every phrase and every word of a statute. The only way to give effect to that word in subsection C is to find that Congress is referring to this plan, which means that this plan, the enforcement provisions of this plan, the enforcement provisions of the Magnuson-Stevens Act, excuse me, apply to this plan as if it were issued under the Magnuson-Stevens Act. And under the Lacey Act exception, that means that the Lacey Act exception applies because the legislative history that we've pointed out in the Doubleday case says that Congress intended the Lacey Act to apply to any fishery management plan enforceable under the Magnuson-Stevens Act. But just a minute, minute, what, 30 plans or more? There are 25 to 35 fishery management plans issued by the seven councils. So the striped bass plan would have to be regulated by any of those plans? No, sir. These are plans that are issued for other species by the regional councils. But the regional council under the Magnuson-Stevens Act has never proposed any plan? Correct. And we would say that's because this statute, the Bass Act, tells the commission to do that. And the regional council would have to submit that plan if they did so, I believe, for approval of the secretary? Correct. And that was never done? That's never done. And we would say to the court it's never been done because those regional councils recognize that the Bass Act authorizes the commission to issue the plan covering striped bass. The plan is in place. So that's why the regional councils haven't acted as to this species. And I think the point that I'd like to make clear to the court is the government, I think, in its briefing argues that, well, there's kind of this hole in the enforcement provisions as to this important species. Well, the management plans issued under the Magnuson-Stevens Act, which undoubtedly would fall under the Lacey Act exception, include many important species, salmon, dolphin fish, mahi-mahi, sea scallops, all very commercially important species. Our point is that Congress has made this decision. Congress has decided that in this scenario the Magnuson-Stevens Act applies and not the Lacey Act. Well, does this essentially write the Bass Act out of the law? No, sir. It gives effect to the words of the Bass Act. It gives effect to the words by giving effect to Section 5158C. Why is it legal for your clients to fish in these waters? Your Honor, I'm not saying it's legal. I'm saying it's not prosecutable under the Lacey Act. They are subject, if this conduct were proven, they are subject to whatever provisions of the Magnuson-Stevens Act would apply to them. And what are they? They are civil penalties, Your Honor. There are other potential criminal penalties under the Magnuson-Stevens Act which would not apply to the conduct that's alleged in this indictment, but there are civil penalties that would apply. And, again, that's Congress's choice. The government may not agree with it, but that's Congress's choice. But the point that we want to make to the court is we're not saying that if the government, there's a difference between not legal to fish and prosecutable under the Lacey Act. Those are two different things. Simply violating the Secretary's regulation does not, in and of itself, make it prosecutable under the Lacey Act because of this exception. That's not to say that some other act doesn't apply to the conduct. The Magnuson-Stevens Act does and would. And that's where we suggest that the government made its error in pursuing this case under the Lacey Act. And that's what the district court found. The other point. Does the fact that this enforcement provision is not promulgated under the act, you seem to be borrowing it, does that make a difference? I don't think it does, Your Honor, because the issue is whether it's part of the plan, whether it's in the plan. And, again, our position is that the plan, you know, the government's take on 4.8.8.1, I believe counsel used the word, expressly disclaims. We would say just the opposite. We would say that the plan is embracing the commission's regulation. It's making it part of the plan. It's not expressly disclaiming anything. If they intended to not make it part of the plan, Section 4.8.8.1 of the plan would not be there. It wouldn't say anything about federal waters. Instead, they included it and they specifically said, the Secretary's got the power to make the regulation. Make the regulation. Regulation that will affect federal waters? Correct. Correct. Fishing in the EZ. And the authorization is stated where? The authorization for the Secretary to do that is not part of the commission's issue, but the commission is making that part of their plan. They are empowered under the Bass Act to make that plan. And Congress is saying in the Bass Act, again, I think at that step of the analysis, Judge, I think if you step back and look at the big picture, I think what Congress is trying to do in 5158C is to say that we want this plan to be treated just like all of the other plans that are issued under the Magnuson-Stevens Act. That's the plain reading of 5158C. And the government tries to get around that by essentially saying, ignore the word plan in Section 5158C. And, of course, we would say that you can't ignore a word in the statute, especially where that statute has been amended three times since the time where the government says an error was made, including one substantial revamp. And that word was left in there every time. Your time has expired. Thank you. Unfortunately. Thank you. We respectfully ask that the orders of the District Court be affirmed. Thank you. Thank you, Mr. Tote. A couple of points in rebuttal. First of all, the government doesn't depend on our argument about a scrivener's error to win. That's even accepting that the Bass Act refers to the plan, as we've already explained, that plan does not regulate defendant's fishing in federal waters. The question of where in the commission's. . . The Bass Act only covers state waters, correct? That's right. I mean, it speaks to the Secretary's authority to issue a regulation on federal waters, but not a plan. And the fact that there may be other plans for other species, but not for the Bass Act, simply further demonstrates our point that this plan is something different. It is not a plan under the Magnuson Act. And as far as what the plan says to purportedly regulate bass in federal waters, we've gone over the statement that they say that the Secretary of Commerce has that authority, not the states. But if you turn the page to the very next page of the commission's plan, it contains recommendations to the Secretary of Commerce about how to regulate bass in federal waters that the Secretary has never adopted. In fact, the commission has at times told the Secretary you should allow fishing in federal waters. The commission was on record as opposing the original, the Secretary's original regulation, saying that we think there should be some fishing in federal waters allowed, and the Secretary disagreed. So it would be strange for the recommendations in the commission's plan to be regarded as regulating fishing, where the commission has said things that the Secretary isn't doing that she should do. That simply is not the normal definition of how a sovereign regulates conduct. And in addition, we do have this problem that the states cannot act to regulate fishing in federal waters. And that is essentially the conclusion that the district court, I mean, the district court's reasoning depends upon the opposite conclusion. So that can't be correct. My friend mentioned that this prosecution, this type of prosecution, has never been accepted by a federal court. We cited in our reply brief, page 24, several prior cases that we've brought and obtained pleas for. But it's true this is an issue of first impression. That does not, however, make the government's theory not viable here. In addition, as to whether there is indeed an enforcement loophole, I mean, the fact that there may be a difference for other species, and that species that are not like the bass, that don't have their own separate statute, where Congress has recognized the interjurisdictional problems of regulating the fish, and that they depend upon the way the fish lives and behaves, that that is something completely separate for those other fish to be regulated by these other plans. The bass is simply a unique fish that Congress has specifically spoken to several times. And that is fairly unique in the federal law for a species to get its own statute, where Congress has paid so much attention to it. So to take away this enforcement tool from the government would deserve the purposes of both the Bass Act and the Lacey Act, which seek to assist, empower the federal government to assist the states in regulating species, where those species are crossing jurisdictional lines. In sum, the striped bass is a fish that, by its nature, poses conservation problems, conservation challenges for regulators, for both the states and for the federal government. Congress has examined this problem, and in several different statutes, has specifically spoken to the question at issue, and has chosen to separate clear lines of authority between the states on one hand, coordinating through the States Commission, and the federal government acting not through Magnuson Act councils, but through the Secretary herself. Those clear lines were blurred by the District Court's order. And in addition, that order relies on an incorrect interpretation of the text of the statutes. And for that reason, the order was in error and should be reversed. Thank you, Mr. Toedt. We'll come down and greet you.
judges: William B. Traxler Jr., James A. Wynn Jr., Norman K. Moon